## No. 658

### ZOTTARELLI et v. UNITED STATES

U. S. Court of Appeals, 6th District.

**288. CONSPIRACY—Offense of conspiracy may be proven by circumstances. Not necessary that defendant should know who all members of conspiracy were.**

**319. COUNTERFEITING—Specific knowledge or belief of counterfeit character of securities, which is essential element of crime of passing counterfeit obligation, may be inferred from testimony and proper deductions therefrom.**

Error to District Court. Judgment affirmed.

KNAPPEN, J.

Zottarelli, Russo and Salupo were convicted, in the District Court, of a conspiracy to defraud the United States and certain banks, by selling certain counterfeit United States War Savings Stamps of the Series of 1919. Each plaintiff in error was also convicted upon a charge of committing substantive offenses. At the close of the testimony, counsel for the

accused made a formal motion for the dismissal of actions against their respective clients. The motion was denied and exception taken.

There was competent, substantial, and undisputed testimony that the stamps which are the subject of these prosecutions were counterfeit. There was also substantial, competent and undisputed testimony directly and naturally tending to show that all of them were manufactured in Chicago by one Leech. It is the theory of the Government, supported by competent and substantial testimony, that Leech and his associate (one Berino) brought a large amount of these counterfeit stamps to Cleveland, and either directly or through others, sold to plaintiff in error, Russo, at 75 cents on the dollar, at least $13,000 thereof, which Russo sold either by himself or through others, principally plaintiffs in error, Zottarelli and Salupo, and apparently some others. Russo admits purchasing the above amount of stamps at the price stated.

Russo usually equally divided the 25 per cent discount with Zottarelli or Salupo, as the case might be, both of whom admit dealing with Russo, disposing of stamps and sharing the 25 per cent discount.

Each plaintiff in error protests his innocence of knowledge or belief that the stamps were forged.

The natural inference from the record would be that each plaintiff in error had reason to believe, when the stamps came into his hands, at least that there was something wrong about them, that they were either stolen or forged. Government obligations already due need not be discounted.

When the stamps came into Russo's hands, and when the deliveries in question were made to Zottarelli and Salupo, the stamps were "loose," that is not attached to folders or certificates. Under the regulations of the Treasury Department, at the time of the transactions in question, loose stamps were not generally accepted, at least in large quantities, but were required to be pasted on folders containing a receipt to be signed by or for the holder. It also appears that folders were, at the period in question, and especially in large quantities, usually unobtainable without a written application, stating, over the applicant's signature, in substance, that the applicant was the original owner of a certain stated number of unaffixed war saving stamps, Series of 1919, which had never been affixed to a war savings certificate; also of whom and when the stamps were purchased.

In the case of each plaintiff in error false statements seem to have been made or caused to be made in the application or certificate.

The method of disposition of the stamps by Zottarelli and Salupo was quite similar.

There was testimony that several of the redeemed certificates bore some genuine stamps. The trial judge was impressed that this was done to deceive. While specific knowledge or belief of their counterfeit character is an essential element of the crime of passing counterfeit obligations of the United States,

knowing them to be counterfeit, considering the testimony in its entirety, as well as inferences properly deducible therefrom, we think it open to the jury to find that plaintiffs in error had knowledge or belief that the stamps were spurious.

We are disposed to think that the fact that the first applications were made to the post-office, rather than to the banks, has substantial significance, as indicating a belief that the stamps were spurious, rather than stolen.

It also seems clear that the fact that the stamps were loose tends strongly to show that they were forged, rather than stolen. If forged, they were almost reasonably certain to be loose; if stolen less likely.

While the counterfeit was so good that the casual or careless observer would easily be mislead, there was substantial testimony that to the critical observer the defects were apparent; and critical observation on the part of one buying past due Government stamps at 25% discount would naturally be challenged.

In view of the apparent intimate relations between the plaintiffs in error, including similarity of methods of selling, the jury might well have believed that whatever one of the conspirators knew regarding the origin of the stamps, all knew. Zottarelli admitted carrying two genuine stamps "for comparison purposes" suggesting knowledge or belief that the stamps he was selling were counterfeit.

True, there was no direct evidence of actual conspiracy, but that was not necessary. That offense, as well as any other, may be proved by circumstances. Nor was it necessary that plaintiffs in error should have known who all the members of the conspiracy were, nor that Leech was a member thereof.

Judgment affirmed.
Before Judges Moorman, Knappen and Hicks.